**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
                                    :
JUAN RAMOS, PETE L. BROOKS,         :
BRAD LAMBERT, and STEPHEN           :
JONES,                              :
                                    :    Civil Action No.
                Plaintiffs,         :    10-cv-979 (NLH)(KMW)
                                    :
     v.                             :    OPINION
                                    :
AIR LIQUIDE,                        :
                                    :
                Defendant.          :
                                    :
```

**APPEARANCES**:

Drake P. Bearden, Jr., Esquire
and
Gregg L. Zeff, Esquire
Law Firm of Gregg L. Zeff
100 Century Parkway
Suite 305
Mt. Laurel, N.J. 08054
*Attorneys for Plaintiffs Juan Ramos, Jr., Pete L. Brooks, Brad Lambert, and Stephen Jones*

Kristine Grady Derewicz, Esquire
Littler Mendelson, P.C.
Three Parkway
1601 Cherry Street, 14th Floor
Philadelphia, PA 19102
*Attorney for Defendant Air Liquide Advanced Technologies U.S. L.L.C.*

**HILLMAN, District Judge**

Plaintiffs, Juan Ramos, Jr., Pete L. Brooks, Brad Lambert, and Stephen Jones allege that they were terminated from their employment with Defendant, Air Liquide Advanced Technologies U.S. L.L.C. ("Air Liquide"), or otherwise subject to discriminatory

treatment, by virtue of their race, color, or national origin. Air Liquide moves to dismiss Plaintiffs' suit, arguing that an arbitration agreement governs this matter.  Plaintiffs dispute Air Liquide's assertion and move to continue the case and compel discovery.

For the reasons expressed below, Air Liquide's Motion to Dismiss is granted in part and stayed in part.  Further, Plaintiffs' Motion for Continuance is granted in part and denied in part.  Plaintiffs shall have thirty (30) days to conduct limited discovery and to submit a supplemental brief in this matter.  Air Liquide, thereafter, shall have ten (10) days to respond.

## I.   JURISDICTION

Plaintiffs have brought their federal claims under 42 U.S.C. § 1981.  The Court may exercise jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.

## II.   BACKGROUND

Juan Ramos, Jr. is Hispanic.  Pete L. Brooks, Brad Lambert, and Stephen Jones are all African-Americans.  The four men were employed by Air Liquide.  All four men allege that they were subjected to racial discrimination and unfair treatment while with Air Liquide.[1]

---

[1] The facts derive primarily from Plaintiffs' complaint, as well as documentation and affidavits appended to the parties' motions.

2

Central to this matter, each plaintiff signed an employment application with Air Liquide.[2]  The application specified that one of the conditions to employment at Air Liquide was the applicant's acknowledgment and acceptance of Air Liquide's alternative dispute resolution policy, including mandatory arbitration and a waiver of the right to pursue remedies in civil court.

During his employment with Air Liquide, which commenced in 2003, Ramos was subjected to several derogatory or unflattering comments concerning Hispanic people.  Among the comments, a co-worker referred to Ramos as "Chico."  (Compl. at 3, ¶ 16). Another co-worker opined as to the number of Hispanic people in Pennsylvania and suggested that they should move to Miami to join with other Hispanic people.  When Ramos confronted this co-worker about his statement, the co-worker responded, "'what's wrong, you're not Puerto Rican, are you?'"  (Id. at 4, ¶ 19).  The following week, the same co-worker made another derogatory statement directed at Ramos's Hispanic background.  Ramos complained to a supervisor who refused to take action because he did not believe the comment was offensive.

On another occasion, Ramos was working in an operator's room

_____

[2] Plaintiffs dispute whether at the time they signed the applications, they were Air Liquide employees or temporary employees assigned to work with Air Liquide by a temporary employment agency.  The significance of this distinction is examined *infra*.

with three black employees, including Pete Brooks, when a co-worker entered the room and, before exiting, stated, "'it's too dark in here for me.'" (Id. at 4, ¶ 23).  Again, Ramos complained to a supervisor, but no action was taken.  Further, Ramos continued to perform all of his duties, but was denied any pay increases or promotions.  Finally, in or around April 2009, Ramos learned of an e-mail circulated by a co-worker that featured approximately ten derogatory jokes about Mexicans in it.  Ramos showed the e-mail to a co-worker.  On May 11, 2009, Ramos was terminated from Air Liquide.

Pete Brooks avers that, in April 2005, he and another African-American were hired by Air Liquide along with a Caucasian.  The Caucasian employee received extensive training while Brooks and the other African-American received none.  Similarly, Brooks had worked on a dangerous machine, and despite Ramos's requests that the machine be fixed, no safety precautions were taken.  However, when a white co-worker began to use the machine and complained of its danger, the machine was immediately repaired.  Lastly, Brooks cites to a couple of incidents when an African-American employee, including himself on one occasion, went to lunch with white co-workers, and upon their return to work, only the black employees were reprimanded for their lateness or failure to sign out of work.  In March 2009, Brooks was terminated from Air Liquide.

Brad Lambert avers that, in 2006, he received the highest evaluation in the company but earned the lowest pay raise.  To combat discrimination at the workplace, Lambert attempted to organize a union.  As a result, he was subjected to disciplinary actions and intimidation, and denied access to the facility.

Finally, during his tenure with Air Liquide, Stephen Jones was repeatedly transferred to different jobs within the company, each time being denied any training for his position.  A Caucasian co-worker who was responsible for his training refused to provide it, telling other employees that Jones was not intelligent enough to be trained.  In April 2008, Jones and two other African-American employees worked a morning shift with a Caucasian co-worker.  Though the white co-worker was the only one of the four men who did not perform any overtime work, he was the only one promoted.  Moreover, as part of his 2008-2009 yearly review, Jones did not receive any credit or acknowledgment for several training programs in which he had participated and other experience he had had.  Jones was terminated from Air Liquide in March 2009.

Collectively, Plaintiffs allege that, despite the similar experiences and productivity that they shared with their Caucasian co-workers, they were paid less and denied pay increases and promotions for invalid or arbitrary reasons.  Plaintiffs point to a number of circumstances that they believe

perpetuated unfair treatment toward minorities at Air Liquide.

Consequently, on or around February 24, 2010, Plaintiffs filed suit in this Court, alleging that Air Liquide committed racial discrimination in violation of 42 U.S.C. § 1981.  On three different occasions, Air Liquide requested that Plaintiffs dismiss this action in favor of arbitration.  Plaintiffs persisted with the current suit.  Thus, on or around August 17, 2010, Air Liquide moved to dismiss Plaintiffs' suit for lack of jurisdiction.  It predicated its motion, in part, on the fact that each plaintiff had signed an employment application in which he agreed to abide by the company's alternative dispute resolution policy and arbitrate any claims he had against Air Liquide or any of its supervisors or managers.  Plaintiffs opposed Air Liquide's motion and moved to continue with their case.

## III. DISCUSSION

### A.   Standard for Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.  In this Circuit, courts generally have accepted and embraced Rule 12(b)(1) as a proper vehicle for deciding whether to dismiss a suit by virtue of an arbitration agreement between the parties.  See, e.g., Wells v. Merit Life Ins. Co., 671 F. Supp. 2d 570, 573 (D. Del. 2009) (stating that

6

"[a] motion to dismiss on the basis that the dispute must be arbitrated is a factual challenge" to a court's subject matter jurisdiction); Hemberger v. E*Trade Fin. Corp., 2007 U.S. Dist. LEXIS 85702, at **7-8 (D.N.J. Nov. 19, 2007) ("A valid and enforceable arbitration agreement will divest the court of subject matter jurisdiction over the arbitrable disputes." (citing 9 U.S.C. § 2)); Norben Imp. Corp. v. Metro. Plant & Flower Corp., 2005 U.S. Dist. LEXIS 34386, at *27 (D.N.J. Jul. 15, 2005) ("[A]n arbitration defense challenges the court's subject matter jurisdiction over the case and is properly raised in a Rule 12(b)(1) motion."); Thompson v. Nienaber, 239 F. Supp. 2d 478, 481 (D.N.J. 2002). Without any clear authority to the contrary, this Court will allow Air Liquide's motion to proceed under Rule 12(b)(1).[3]

---

[3] While Air Liquide seeks to dismiss Plaintiffs' claims pursuant to Rule 12(b)(1), Plaintiffs believe the proper standard of review to determine whether an arbitration agreement governs a dispute is the standard applicable to summary judgment. Along those lines, there is authority to suggest that a party seeking dismissal on the basis of an arbitration agreement should proceed under Federal Rule of Civil Procedure 12(b)(6), and that if matters outside of the pleadings are considered, the motion should be converted to a motion for summary judgment. See, e.g., Palcko v. Airbourne Express, Inc., 372 F.3d 588, 597 (3d Cir. 2004) ("Our prior decisions support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted."); Nationwide Ins. Co. v. Patterson, 953 F.2d 44, 45 n.1 (3d Cir. 1991) ("Dismissal of a declaratory judgment action because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6) covering dismissals for failure to state a claim upon which relief can be granted, or Rule 56 covering summary judgments if matters beyond the pleadings were

"When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must accept as true all material allegations of the complaint and construe that complaint in favor of the non-moving party." Thompson, 239 F. Supp. 2d at 481 (citing Warth v. Seldin, 422 U.S. 490, 501 (1975)).  Moreover, if a factual question pertaining to jurisdiction exists, the court may examine facts and evidence outside of the pleadings to assure itself of its authority to hear the case.  Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997); see also Thompson, 239 F. Supp. 2d at 482 (noting that the court may "find facts based on affidavits or materials submitted to" it).

B.   **Arbitration Agreement**

Air Liquide argues that in signing their employment applications, each plaintiff agreed to resolve any disputes concerning employment discrimination through arbitration.  Air Liquide defends the validity of the agreements and explains that a federal court cannot exercise subject matter jurisdiction over this case because only an arbitrator may hear it.

---

considered." (citations omitted)).  In spite of which standard applies, however, the Court will reach the same outcome in this case.  Both parties urge the Court to look beyond the pleadings to consider evidence including affidavits, contracts, and other documentation.  Further, for purposes of deciding this matter, the Court accepts Plaintiffs' factual representations as true. Therefore, regardless of the particular standard of review governing this motion, the Court's analysis would be substantially the same and the same result would follow.

Plaintiffs counter that at the time they agreed to the arbitration policy, they were temporary employees with Air Liquide, assigned to work with the company through a temporary employment agency.  After being officially hired, Plaintiffs signed another employment agreement, sans an arbitration clause. Therefore, Plaintiffs surmise that the arbitration agreement does not apply to them and, alternatively, is superseded by the subsequent agreement between the parties.  Plaintiffs opine that further discovery is necessary to resolve any contested or uncertain facts surrounding their putative assent to an alternative dispute resolution for employment claims.[4]

"A motion to compel arbitration calls for a two step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).  "When determining both the existence and the scope of an arbitration agreement, there is a presumption in favor of arbitrability."  Id.  Agreements that subject claims of employment discrimination to arbitration are enforceable.  See Wright v. Rent-A-Center East, Inc., 2009 U.S. Dist. LEXIS 110882,

---

[4] Plaintiffs also contend that Brad Lambert, in particular, is not bound to arbitrate pursuant to any employment agreement because the employment application he signed applies only "IN THE EVENT I SHOULD BE INVOLUNTARILY TERMINATED."  (Def. Mot., Exh. 3).  Because Lambert purportedly filed his claim against Air Liquide before being involuntarily terminated, Plaintiffs surmise, the application's condition cannot govern his claim.

at **7 & n.2 (D. Del. Nov. 30, 2009); Smith v. Radwell Int'l, Inc., 2007 U.S. Dist. LEXIS 45123, at *9 (D.N.J. Jun. 20, 2007). For purposes of the present matter, Plaintiffs do not dispute that their cause of action under 42 U.S.C. § 1981 falls within the scope of Air Liquide's arbitration agreement.  Rather, Plaintiffs challenge the very existence of a valid arbitration agreement.

To determine whether parties agreed to arbitrate, ordinary state-law principles of contracts apply.  Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009).  Both parties cite to the contract law of the State of Delaware.[5] Generally speaking, however, this Court must determine the appropriate state law to apply pursuant to the choice of law principles of its forum state -- the State of New Jersey.  See Chin v. Chrysler L.L.C., 538 F.3d 272, 278 (3d Cir. 2008).  In this case, whether the Court applies Delaware or New Jersey law, the results will be the same.  "In Delaware, a contract exists if a reasonable person would conclude, based on the objective manifestations of assent and surrounding circumstances, that the parties intended to be bound to their agreement on all essential terms."  Wells v. Merit Life Ins. Co., 671 F. Supp. 2d 570, 574

---

[5] The reliance on Delaware state law, Air Liquide submits, arises from the fact that three of the plaintiffs reside in the State of Delaware and all four of them worked with Air Liquide in that state.  Plaintiffs, too, seem to accept that Delaware law applies to this matter.

(D. Del. 2009) (citation and internal quotation marks omitted).
Similarly, "'[u]nder New Jersey law, an enforceable contract is
created when two parties 'agree on essential terms and manifest
an intention to be bound by those terms.'"  DirecTech Del., Inc.
v. Allstar Satellite, Inc., 2010 U.S. Dist. LEXIS 44330, at *8
(D.N.J. May 6, 2010) (quoting Barak v. Obioha, 74 F. App'x 164,
166 (3d Cir. 2003)).

Air Liquide's Alternative Dispute Resolution ("ADR") policy
requires that all claims, including those involving
discrimination, be resolved in arbitration, and that the right to
adjudicate claims in court is expressly waived.  Before beginning
his official, full-time employment with Air Liquide, each
plaintiff signed an Employment Application, which read in
relevant part:

> IN THE EVENT I SHOULD BE INVOLUNTARILY
> TERMINATED, I AGREE TO ABIDE BY THE TERMS OF
> THE COMPANY'S ALTERNATIVE DISPUTE RESOLUTION
> PROCEDURE.
>
> I UNDERSTAND THAT THE AGREEMENT TO ARBITRATE
> UNDER THE CORPORATION'S ALTERNATIVE DISPUTE
> RESOLUTION POLICY PRE-EMPTS MY RIGHT TO PURSUE
> REMEDIES IN ANY COURT AGAINST EITHER THE
> COMPANY OR AN INDIVIDUAL SUPERVISOR OR
> MANAGER.
>
> . . . .
>
> I CERTIFY THAT I HAVE READ, UNDERSTAND AND
> ACCEPT THE COMPANY'S ALTERNATIVE DISPUTE
> RESOLUTION POLICY.

11

(Def. Mot., Exhs. 1-4).[6]  In March 2006, Ramos, Brooks, and Lambert also acknowledged in an electronic document sent to Air Liquide's Human Resources Department that "I have reviewed and am familiar with the company's new ADR Agreement and understand and agree that all disputes shall be resolved through ADR, including binding arbitration if necessary."  (Def. Mot., Exhs. 5-7).

Air Liquide correctly asserts that arbitration agreements contained in pre-employment contracts, applications, or materials generally may bind the parties even if the prospective employee has not officially begun his job with the employer at the time of mutual assent.  See, e.g., EEOC v. Waffle House, Inc., 534 U.S. 279, 282 (2002) (recognizing as enforceable an arbitration agreement signed by a prospective employee contained in an employment application); Carfagno v. ACE, Ltd., 2005 U.S. Dist. LEXIS 12614, at **26-29 (D.N.J. Jun. 28, 2005) (enforcing arbitration agreements contained in employment applications); Sarbak v. Citigroup Global Mkts., Inc., 354 F. Supp. 2d 531, 534, 543 (D.N.J. 2004) (enforcing arbitration agreement set forth in documents presented to employee "prior to commencing employment").  Plaintiffs present no legal authority to the contrary.  Rather, they simply assert that because they may have been employed by a temporary employment agency at the time they

---

[6] Air Liquide acknowledges that its ADR policy has changed over the years, but its scope and arbitration mandate have remained virtually the same and in effect.

agreed to the ADR policy, those agreements cannot bind them to arbitration since they were not "employees" of Air Liquide as contemplated by the company's ADR policy.  By its own terms, Plaintiffs submit, the ADR policy applies only to present and former employees.

For whatever merit Plaintiffs' argument may have, in this case it misses the mark.  It is unavailing for Plaintiffs to say that they cannot be bound by conditions of employment simply because those conditions are stipulated and must be agreed upon at the outset of employment or before an actual hiring decision is made.  Here, each plaintiff signed an "Employment Application."  To each prospective employee, the application asks a litany of questions, such as "Applying For Position As," "Desired Salary," "Have You Previously Applied To, Or Been Employed By An Air Liquide Company?"  (Def. Mot., Exhs. 1-4).  The application also makes clear that each applicant's prospective employment is contingent on multiple stipulations and conditions, including the applicant's provision of certain documentation and consent to permit Air Liquide to conduct a background investigation or mandate a physical examination of the applicant.  In one paragraph, the Employment Application reads: "I UNDERSTAND AND AGREE THAT *IF I AM EMPLOYED*, I SHALL BE EMPLOYED ON AN AT-WILL BASIS."  (Id. (emphasis added)).

In sum, the Employment Application completed by each

13

plaintiff is exactly as advertised: an application for employment.  As one of the conditions of employment, a prospective employee must agree to abide by Air Liquide's ADR policy and arbitrate any claims that he may have against the company or its supervisors or managers.  In fact, following the pronouncement of Air Liquide's mandatory ADR policy, the Employment Application provides: "I ALSO UNDERSTAND THAT THE CORPORATION'S OFFER OF EMPLOYMENT IS IN CONSIDERATION FOR AND CONTINGENT UPON ACCEPTANCE OF THE ABOVE."  (Id.).  Nothing suggests that this condition of mandatory arbitration, in and of itself, is unconscionable, unenforceable, or otherwise ambiguous as set forth in the Employment Application.  That Air Liquide's ADR policy applies only to present and former employees does not undermine the import of a prospective employee signing the Employment Application.  While the ADR policy's provisions may not effectively apply to or bind a prospective employee before that employee becomes an official Air Liquide employee, the prospective employee, by signing the Employment Application, assents to the ADR policy and agrees to be bound by it once he commences his employment with Air Liquide.

In this case, Plaintiffs, while they may or may not have been official, full-time Air Liquide employees when they signed their respective Employment Applications, were all official, full-time Air Liquide employees at the time they purportedly

14

suffered racial discrimination by the company and sought redress
for their injuries.  In order to secure employment with Air
Liquide, each signed the Employment Application and agreed to its
terms, including the ADR policy and its mandatory arbitration.
Having agreed to those conditions of employment, Plaintiffs
cannot now withdraw their assent by saying they were not official
employees at the time they gave it.  Suffice it to say,
Plaintiffs were not likely official employees when each signed
the Employment Application because the application is intended
for prospective, full-time employees, not current ones.  That
does not change the fact that the ADR policy, which Plaintiffs
agreed to accept in the Employment Application, governs disputes
of employees against Air Liquide.  At the time that their
disputes arose, Plaintiffs were employees of Air Liquide, and not
merely workers from a temporary employment agency.

 Notwithstanding their signatures on the Employment
Applications, Plaintiffs contend that they never mutually
assented to the ADR policy and arbitration because they never
received any notification of or actual copy of the ADR policy.
In particular, Plaintiffs rely on Pratta v. American General
Financial Services, Inc., 2004 U.S. Dist. LEXIS 23044 (D. Del.
Nov. 5, 2004), to illustrate that they could not accept Air
Liquide's arbitration mandate when they never received or saw the
ADR policy.  Pratta, however, is distinguishable from the present

matter.  In that case, the Delaware District Court held that the defendant-employer unilaterally imposed the arbitration policy upon its employees, including the plaintiff.  Id. at *5. According to the Court, the defendant did not sufficiently demonstrate that the plaintiff had received any notice or documentation concerning the arbitration policy.  Id. at *6.  The plaintiff's continued work with the defendant, alone, did not constitute acceptance of the defendant's offer to arbitrate, the Court concluded.  Id.

Unlike in Pratta, Plaintiffs received notice of Air Liquide's ADR policy in their Employment Applications. Significantly, when each plaintiff signed the Employment Application, he acknowledged, by the application's clear and unequivocal terms, that "I CERTIFY THAT I HAVE READ, UNDERSTAND AND ACCEPT THE COMPANY'S ALTERNATIVE DISPUTE RESOLUTION POLICY." (Def. Mot., Exhs. 1-4).  Consequently, this case more closely resembles the circumstances addressed in Scrivner v. ACE USA, 2007 U.S. Dist. LEXIS 85572 (E.D. Pa. Nov. 20, 2007), in which the District Court for the Eastern District of Pennsylvania, applying Delaware law, granted the defendant-employer's motion to compel arbitration.  In reaching its decision, the Court explained:

> In the present case, the plaintiff, who held a
> management position within ACE, signed a
> document stating, "I agree that it is my
> responsibility to read the Employee Guide and

16

> to understand and abide by the rules,
> policies, procedures and standards set forth
> in the Guide." From an objective standpoint,
> this signature indicates her intent to be
> bound by the policies noted in the Guide.
> Furthermore, ACE's insistence that all
> employees sign the [document] should have put
> the plaintiff on notice that she was agreeing
> to substantive policies. The plaintiff's
> argument that she did not know the contents
> of, and was never given, the Guide is
> unavailing.

Id. at *6.

Adopting the reasoning set forth in Scrivner, this Court agrees that Plaintiffs' conduct manifests their intent to be bound by Air Liquide's ADR policy and its arbitration clause. A signee of the Employment Application explicitly agrees to accept and abide by the ADR policy as a condition to employment and, moreover, acknowledges that he has read and understood the ADR policy. Having signed the Employment Application, each plaintiff cannot claim he did not know of the ADR policy or excuse his failure to obtain or read the policy. See id. at *7 ("Under Delaware law, failure to read a contract is no defense to its enforcement. Graham v. State Farm Mut. Auto. Ins. Co., 565 A.2d 908 (Del. 1989). Nor is a failure to be presented with the contract at the time of acceptance."); see also Toll Bros., Inc. v. Fields, 2011 U.S. Dist. LEXIS 10981, at *9 (D.N.J. Feb. 4, 2011) (under New Jersey law, "the failure 'to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading'" (quoting Young v.

17

Prudential Ins. Co. Of Am., 688 A.2d 1069, 1077 (N.J. App. Div. 1997))); Carfagno, 2005 U.S. Dist. LEXIS 12614, at *29 (finding that "there is no merit to the argument . . . that the [arbitration] clause should be held invalid because the arbitration policy was not made available to each [plaintiff] before signing").

Absent any evidence that Plaintiffs were denied access to the ADR policy or did not understand it, their execution of the Employment Applications exhibits their consent to comply with Air Liquide's ADR policy and to arbitrate their claims.  See, e.g., Carfagno, 2005 U.S. Dist. LEXIS 12614, at *29; Sarbak, 354 F. Supp. 2d at 539-40.  The only suggestion that Air Liquide hindered Plaintiffs ability to learn more about the ADR policy are allegations by three of the plaintiffs, set forth in affidavits, that they did not have an opportunity to ask questions about a packet of papers they received at the time they were offered full-time employment.  Those attestations, however, do not establish any fraud, misconduct, or overt actions by Air Liquide or its employees that effectively precluded Plaintiffs from ever obtaining information about the arbitration agreement. Moreover, based on Plaintiffs' representations, the lack of an opportunity to ask questions, it appears, related to the employment packets Plaintiffs later completed and not the actual

18

Employment Applications that they signed.[7]   Therefore, at this time Plaintiffs present no basis to invalidate the arbitration agreements contained in the Employment Applications.[8] Nevertheless, as explained *infra*, the Court will permit Plaintiffs to conduct limited discovery regarding a discrete issue.

Accordingly, insofar as Plaintiffs argue that the Employment Application cannot constitute an arbitration agreement because Plaintiffs were not official, full-time employees of Air Liquide when they signed the applications, Air Liquide's motion is granted.   However, for reasons stated below, Air Liquide's motion will also be stayed in part.

## C.   Plaintiffs' Motion for Continuance

Plaintiffs insist that discovery is necessary to resolve factual and legal matters that may weigh on the applicability and enforceability of Air Liquide's arbitration policy.   Plaintiffs point to Federal Rule of Civil Procedure 56(f) for the authority to continue this matter, conduct discovery, and stay any resolution of Air Liquide's motion.   Air Liquide counters that

---

[7] In their respective affidavits, each plaintiff attests that he signed the Employment Agreement, at the behest of an Air Liquide secretary, at the time when he was notified that Air Liquide wanted to hire him as a full-time employee.

[8] Were the Court to review this matter pursuant to a summary judgment standard, Plaintiffs' affidavits present no genuine issues of material fact to alter the Court's determination.

the additional discovery sought by Plaintiffs is irrelevant to the only pertinent question: whether the parties agreed to arbitration.  Given the futility and immateriality of any discovery, Air Liquide submits, Plaintiffs' motion should be denied.

Since Plaintiffs' filing of its motion, Federal Rule of Civil Procedure 56(f) has become Federal Rule of Civil Procedure 56(d) "'without substantial change.'"  See Colonial Sur. Co. v. DME Constr. Assocs., 2011 U.S. Dist. LEXIS 16493, at *14 n.5 (M.D. Pa. Feb. 18, 2011) (quoting Fed. R. Civ. P. 56, 2010 advisory committee note).  For the sake of simplicity and clarity, the Court will refer to the current Rule 56(d), noting that the following analysis would be the same irrespective of whichever version of the applicable rule were applied.

Federal Rule of Civil Procedure 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  "In order to justify relief under Rule 56[(d)], a party must, by affidavit, specify what particular information is sought; how, if uncovered, it would preclude

summary judgment; and why it has not previously been obtained." Tarr v. FedEx Ground, 2010 U.S. App. LEXIS 22284, at *15 (3d Cir. Oct. 27, 2010) (citation and internal quotation marks omitted).

In an affidavit supporting its motion, Plaintiffs' counsel suggests that discovery will uncover salient facts concerning Plaintiffs' employment statuses at the time they signed their Employment Applications. However, it is already clear that Plaintiffs were likely temporary, or provisional, employees when confronted with the Employment Applications. If that were true, as Plaintiffs suggest, they are still bound by the arbitration agreements to which they assented by virtue of their signatures, as further discussed *supra*. Therefore, the Court finds that Plaintiffs' request for discovery concerning Plaintiffs' job statuses at the time they signed the Employment Applications would not uncover any evidence that could preclude dismissal of this suit or is otherwise essential to the disposition of Air Liquide's motion.

That being said, Plaintiffs explain that when they were hired as official, full-time employees with Air Liquide, they were presented with another contract, an employment packet, to sign. Plaintiffs opine that this latter agreement constitutes the operative covenant between Air Liquide and themselves, and thus supersedes the Employment Applications they previously executed. Air Liquide does not directly address this contention.

21

In the interests of justice and prudence, the Court will grant Plaintiffs' motion in part, to enable Plaintiffs to secure copies of their subsequent agreements with Air Liquide.  Further, Plaintiffs shall have leave to submit a supplemental brief in opposition to Air Liquide's present motion, and may argue to the Court how and why the subsequent agreements supersede the Employment Applications or otherwise undermine Plaintiffs' prior assent to the arbitration policy.

In sum, Air Liquide's Motion to Dismiss is granted in part and stayed in part.  Plaintiffs' motion is granted in part and denied in part.  Plaintiffs may conduct discovery inasmuch as they may obtain copies of whatever contracts or packet of documents Plaintiffs received and signed at the inception of their official, full-time employment with Air Liquide. Thereafter, Plaintiffs may submit a supplemental brief in opposition to Air Liquide's motion.  In response to any filing by Plaintiffs, Air Liquide shall have ten (10) days to reply.[9]

## IV.  CONCLUSION

For the foregoing reasons, Air Liquide's Motion to Dismiss

---

[9] Given the current disposition of this matter, the Court will refrain from addressing two other issues presented in the pending motions: (1) the applicability and enforceability of the electronic "Code of Conduct/ADR History" surveys and (2) the applicability and enforceability of the arbitration agreement to Brad Lambert, who purportedly filed his claim before being involuntarily terminated by Air Liquide.  The Court reserves judgment on those two issues, but invites the parties, in their supplemental briefs, to elaborate on them.

is granted in part and stayed in part.  Further, Plaintiffs'
Motion for Continuance is granted in part and denied in part.
Plaintiffs shall have thirty (30) days to obtain copies of the
employment packets that they completed during their meetings with
the Air Liquide secretary and to submit a supplemental brief to
the Court explaining how and why those subsequent agreements
supersede or otherwise undermine the arbitration agreements
espoused in the Employment Applications.  Air Liquide shall have
ten (10) days from the submission of Plaintiffs' brief to
respond.  Should Plaintiffs fail to comply with this Order and
submit a supplemental brief, the Court will lift the stay and
grant Air Liquide's motion in its entirety.  An Order consistent
with this Opinion will be entered.


Dated: March 28, 2011                    /s/ NOEL L. HILLMAN
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.